**In re Daniel Francis LAUBACHER, Penny Sue Laubacher, Debtors.**

**Bankruptcy No. 92–60282.**

United States Bankruptcy Court, N.D. Ohio.

June 26, 1992.

Kirk A. Migdal, Akron, OH.

Donald R. Little, Canton, OH.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

Presently before the court is a motion filed by Avco Financial Services, Inc. (Avco) requesting compliance with 11 U.S.C. § 521(2)(A). Daniel Francis Laubacher and Penny Sue Laubacher (Debtors) argue that the Code does not limit a debtor to redemption, reaffirmation or surrender of secured real property, but that the debtor may retain the property and continue to make payments so long as no default has occurred. At hearing on May 21, 1992, the court directed the parties' attention to *In re Bell*, 700 F.2d 1053 (6th Cir.1983) and invited the submission of briefs. Debtors filed a "brief" which proposed the signing of a reaffirmation agreement without imposing personal liability. Avco simply restated its motion, citing *Bell, supra.*

The court has jurisdiction in this matter by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

## FACTS

Avco holds a second mortgage on Debtors' real property which was granted on February 23, 1987. Debtors filed a Chapter 13 petition on February 11, 1992. They subsequently converted their case to one under Chapter 7 on March 6, 1992. Avco's mortgage was not in default at the time of filing. Debtors value the real property at $45,000.00. The proofs of claim filed by the first mortgagee, Citizens Savings, and Avco total just over $41,000.00 in principal.

On April 23, 1992 Debtors' counsel advised Avco by letter that Debtors intended to continue monthly loan payments without executing a reaffirmation agreement. The Chapter 7 trustee abandoned the real estate on May 5, 1992. Avco filed its motion to compel compliance with Section 521(2)(A) the same day.

## DISCUSSION

Among the duties a debtor shall perform in a Chapter 7 bankruptcy case is the following:

The debtor shall—

. . . . .

(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—

(A) within 30 days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property[.]

11 U.S.C. § 521(2)(A).

An initial question is whether this mortgage is a "consumer debt" as it is clear the real estate collateral is property of the estate. The Code defines a consumer debt as "debt incurred by an individual primarily for a personal, family or household purpose...." 11 U.S.C. § 101(8).

Several cases dealing with other sections of the Code address whether the term "consumer debt" includes a debt secured by real property. Two Circuit Courts of Appeals have held that within the context of Section 707(b), which permits dismissal of a Chapter 7 case for substantial abuse if the debts are primarily consumer debts, the analysis is whether the debt was incurred for business or profit-seeking purposes, not whether the collateral is real or personal property. *In re Kelly*, 841 F.2d 908 (9th Cir.1988); *Matter of Booth*, 858 F.2d 1051 (5th Cir.1988); *See also Bennett v. Lukens*, 131 B.R. 427 (S.D.Ind.1991) (using same test in discussing whether prevailing debtor could recover attorney fees under Section 523(d) in contesting dischargeability of a consumer debt).

Earlier cases have held that to the extent a debt is secured by real property, it is *not* a consumer debt. *In re Stein*, 18 B.R. 768 (Bankr.S.D.Ohio 1982) (creditor could collect nonconsumer debt on real estate from codebtor under 11 U.S.C. § 1301); *Matter of Nenninger*, 32 B.R. 624 (Bankr. W.D.Wis.1983) (portion of commercial loan used to purchase residence not consumer debt); *cf. In re Burgess*, 22 B.R. 771 (Bankr.M.D.Tenn.1982) (unsecured debt for purchase of real property was a consumer debt). These cases have consistently relied on remarks contained in the legislative history of Section 101(8). *See also* 2 Collier on Bankruptcy, ¶ 101.08 (1991) (referencing statements of Rep. Edwards and Sen. DeConcini). However, the Ninth Circuit held in *Kelly, supra* that a lack of ambiguity as to the term "debt" prevented inquiry into the legislative history, noting that Section 521(2) included secured debt. In holding that secured debt included that secured by real property, it noted that Section 524 differentiated between consumer debt secured by real and personal property in discussing reaffirmation. *Id.* at 912.

The court notes that none of these cases precisely address whether a debt secured by real property is included under Section

521(2)(A). The court will assume, without deciding the issue, that Avco's second mortgage is a consumer debt and proceed with its analysis accordingly.

At hearing, the court noted the Sixth Circuit decision in *Bell, supra* and requested the parties' input as to whether it was applicable to the instant situation, indicating an initial inclination to follow the decision. Although the parties have provided little assistance, the court concludes upon a more thorough review of the *Bell* opinion that it is both factually and legally distinguishable.

In *Bell*, the debtors financed a vehicle, were current in payment on their obligation when their Chapter 7 petition was filed and were not otherwise in default. After the debtors utilized their exemptions and the trustee abandoned the estate's interest, the creditors sought repossession. The debtors moved to retain the vehicle upon continued monthly payments. The Bankruptcy Court permitted installment redemption, but the District Court reversed.

The Sixth Circuit reviewed the Chapter 7 redemption provision:

> An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

11 U.S.C. § 722. Although Section 722 is silent as to how redemption is accomplished, the court concluded that redemption must be payable in a lump sum, as opposed to the alternative method of reaffirmation.

> Section 524(c) authorizes a Chapter 7 debtor to seek renegotiation of the terms of the security agreement with the creditor thereby creating an alternative method pursuant to which a debtor may attempt to retain possession of secured collateral. Such an alternative, obviously attractive to the debtor financially unable to redeem the secured collateral through a lump sum payment, is the equitable compliment to § 722. Simply, a debtor incapable or unwilling to tender a lump-sum redemption and redeem the secured collateral for its fair market value may reaffirm with the creditor; contrawise, a debtor confronted with a creditor unwilling to execute a renegotiation may retain the secured collateral by redeeming it for its fair market value, which value may be substantially less than the contractual indebtedness.

*Id.* at 1056 (citations omitted). The court was unsympathetic to the debtor's argument that limiting options to redemption or reaffirmation would result in Chapter 7 debtors having no viable method of retaining secured collateral, stating:

> [A] debtor may avoid such an untenuous position by initially filing a petition for bankruptcy under Chapter 13 or converting an existing Chapter 7 proceeding to a Chapter 13 proceeding. Chapter 13 is designed to provide a debtor with a fresh start through rehabilitation, unlike Chapter 7 which provides a fresh start through liquidation. As such, Chapter 13 authorizes redemption by installment over an objection by the creditor ..., the very result sought in the action at bar.

*Id.* at 1057.

Debtors also argued that upon abandonment, they reacquired the collateral and, under the security agreement, could maintain possession by continuing payments. The court held that the property was no longer protected under 11 U.S.C. § 541(c)(1) from the effect of an *ipso facto* clause once it had been abandoned. Consequently, the debtors were in default. The court concluded:

> In sum, this court concludes that redemption and reaffirmation constituted the exclusive methods pursuant to which the Bells could retain possession of the secured collateral. The sole method of redemption available to a chapter 7 debtor under § 722 is a lump-sum redemption.

*Id.* at 1058

The *Bell* analysis loses its foundation when applied to real property. Because

Section 722 is by its terms inapplicable to real property, mortgagors are not able to avail themselves of the choice of reaffirmation or redemption available to holders of personal property. Because the creditor controls whether reaffirmation is possible, a mortgagee could hold the debtor hostage and force a surrender of the property unless a viable alternative method is available. There is no evidence of a technical "default" in this case. The court concludes that while *Bell* may be correct in its analysis with regard to personal property, it cannot be extended to cover real property.

The court believes the correct result is that which permits the Debtors to retain the property and continue their payments under the contract. Since *Bell* was decided, two other courts of appeals have held that Section 521(2)(A) is nonexclusive, that debtors may continue payments without redemption or reaffirmation, and that an *ipso facto* clause cannot be used to impose a default. *In re Belanger,* 962 F.2d 345 (4th Cir.1992); *Lowry Federal Credit Union v. West,* 882 F.2d 1543 (10th Cir.1989); *contra Matter of Edwards,* 901 F.2d 1383 (7th Cir.1990) (following *Bell*). Similarly, *In re Stefano,* 134 B.R. 824 (Bankr.W.D.Pa. 1991), acknowledged the split of authority and concluded that *Lowry, supra* was the correct result when applied to a mortgage of real property. Bankruptcy Judge Bentz stated:

> Allowing the Debtors to remain in possession of the Property by payment of monthly installments places the parties in the same positions that they had prior to bankruptcy. Should the Debtors fail to remit regular monthly payments in the future, GNC is free to effect foreclosure.

*Id.* at 827.

The court concludes that 11 U.S.C. § 521(2)(A) does not limit the Debtors to redemption, reaffirmation or surrender, but that Debtors may remain in possession of the real estate and continue monthly payments under the loan agreement. Should default occur, Avco is free to exercise its rights and remedies, including foreclosure.

The motion to compel compliance with Section 521 will be denied.