**In re Ralph H. CARPINELLA, Debtor.**

**Bankruptcy No. 94–30065.**
**DOC. I.D. No. 16.**

United States Bankruptcy Court,
D. Connecticut.

Oct. 15, 1996.

Matthew J. McGowan, Salter, McGowan, Swartz & Holden, Inc., Providence, RI, James M. Nugent, Charmoy & Nugent, Bridgeport, CT, for Movant.

James G. Verrillo, Bridgeport, CT, for Debtor–Respondent.

**MEMORANDUM OF DECISION ON MOTION TO COMPEL REAFFIRMATION, REDEMPTION OR SURRENDER**

ALBERT S. DABROWSKI, Bankruptcy Judge.

## I. INTRODUCTION

This matter presents an interesting issue of statutory construction, on which there has been a fair difference of judicial opinion, both at the appellate and trial court levels. Distilled to its essence, the question presented asks whether a bankruptcy debtor may retain secured property through the continued and timely payment of contractual installments under a loan agreement on which his personal liability has been, or will be, discharged, or whether as a condition of retaining the collateral he is compelled by Bankruptcy Code Section 521(2)(A) to either (1) surrender the collateral, (2) redeem the collateral through the payment of the amount of the creditor's allowed secured claim, or (3) reaffirm his personal liability under the loan agreement.

The Second Circuit Court of Appeals has not yet addressed this question, and within the District of Connecticut, only Bankruptcy Judge Robert L. Krechevsky has spoken to the issue in a written opinion.

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant matter by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine the matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(*O* ).

## III. FACTUAL BACKGROUND

The parties have submitted this matter to the Court on the basis of agreed facts as follows. On or about February 5, 1988, the Debtor entered into a credit transaction with the Bank of Boston Connecticut (hereafter, the "Bank") through which he became obligated to the Bank in the approximate amount of $395,000 (hereafter, the "Obligation") under a certain Equity Credit Line Agreement and Promissory Note (hereafter, the "Loan Agreement"). The Obligation was secured by an Equity Credit Line Open–End Mortgage dated February 5, 1988 (hereafter, the "Mortgage"), which encumbered real property of the Debtor known as and numbered 80 North Farm Road, Town of Middlebury, State of Connecticut (hereafter, the "Real Property").

On April 12, 1994, the Debtor commenced this bankruptcy case under Chapter 7 of the Bankruptcy Code through the filing of a voluntary petition (hereafter, the "Petition"). At the time of the filing of the Petition, and at the time of the submission of the instant matter to the Court, the Debtor was not in default under the Loan Agreement or Mortgage. Entry of a discharge order has been postponed at the request of the Bank pending determination of this matter.

Pursuant to the dictates of 11 U.S.C. § 521, the Debtor filed with his Petition a Statement of Intention, wherein he indicated an intent to retain the Real Property and reaffirm the Obligation. Subsequently, the Debtor determined not to reaffirm the Obligation, but rather to retain the Real Property and maintain current periodic installment payments and otherwise remain in a non-default status under the Loan Agreement and Mortgage. This change of intention prompted the Bank to prosecute the instant motion which seeks to compel the Debtor to: (1) reaffirm the Obligation, (2) redeem the Real Property from the Bank, or (3) surrender the Real Property to the Bank.[1]

---

1. The secured creditor in this case urges this Court to compel the debtor to "reaffirm the debt ... or redeem or surrender the collateral ..." arguing under authority of *Matter of Edwards*, 901 F.2d 1383, 1385 (7th Cir.1990) that the debtor's options are limited to those three clear choices. Memorandum in Support of (Creditor's) Motion, Doc. I.D. No. 19 at 2–3. In *Ed-*

*wards,* the collateral consisted of *personal* property, namely, an automobile and a truck. The collateral at issue here is *real* property—scheduled as the debtor's principal residence. The Court, of course, is cognizant of the limitations applicable to redemption contained within Bankruptcy Code Section 722. Because of this Court's ultimate conclusion that the debtor is not

## III. DISCUSSION

The dispositive issue in this matter— whether the Bankruptcy Code in general, or Code Section 521 in specific, preclude a debtor from retaining secured property through the maintenance of contract installment payments to the secured creditor—has been addressed by a number of courts, albeit none with direct precedential authority over this Court. At this time, the four United States Circuit Courts of Appeal which have taken up the issue are evenly divided.[2]

This Court's independent statutory analysis, and review of the extant judicial authorities, leads it to concur fully in the opinion of the Honorable Robert L. Krechevsky, fellow United States Bankruptcy Judge for the District of Connecticut, in the case of *In re Parlato*, 185 B.R. 413 (Bankr.D.Conn.1995). In *Parlato*, Judge Krechevsky concluded:

> ... Congress did not intend to increase the secured creditor's substantive rights and make redemption and reaffirmation the debtor's sole rights where the debtor is not in default of his contractual obligations with the secured creditor. The requirements of § 521(2)(A) are procedural in nature. This interpretation promotes the "fresh start" policy by balancing the rights of a creditor to proceed against the debtor if there is a default, with the preservation of the substantive rights of the debtor under § 521(2)(C).

*Id.* at 417 (footnotes omitted).

By way of further observation, this Court notes that nothing in the Bankruptcy Code as construed by this Court unduly prejudices the rights of a secured creditor *as to its collateral*. Once a debtor's discharge has entered and the subject collateral ceases to be property of the bankruptcy estate[3], the secured creditor can freely exercise the same rights against its collateral that it possessed prior to the bankruptcy filing; *i.e.* if the debtor defaults under the relevant loan and/or security agreement, the secured creditor can move against the collateral in accordance with those agreements and applicable non-bankruptcy law. And of course if the debtor does not default, the creditor is not prejudiced because it receives the benefit of its original credit bargain.

This is not to say that there is no possibility for prejudice to undersecured creditors if Section 521 is construed to permit a "retain and pay" option such as that allowed in this case. A possibility for prejudice lies in the unenforceable deficiency obligation which would exist upon a debtor's default and undersecured creditor's liquidation of the collateral. Arguably, a secured creditor is prejudiced if, post-discharge, its collateral is depreciating faster than the debtor's amortization of principal on the subject loan obligation, thereby, over time, creating and/or increasing the amount of the unenforceable deficiency.

Of course the possibility and progression of collateral depreciation is an integral component of the calculus which ultimately determines the terms—most notably, the principal amortization schedule—of loan agreements. Whether extraordinary depreciation and/or deterioration resulting from debtor conduct or misconduct might compel a different result in a case of this nature need not be addressed at this time. For in this case there was no claim, nor evidence adduced, that the subject collateral—the principal residence of the Debtor—is subject to extraordinary depreciation and/or deterioration.

## IV. CONCLUSION

For the foregoing reasons, the above-captioned motion of the Bank of Boston Connecticut to compel the debtor to reaffirm the subject debt, redeem the subject real proper-

---

constrained to make only choices listed in Section 521, the limitations of Section 722 do not impact the analysis and need not be addressed further.

2. These cases are reviewed in *In re Parlato*, 185 B.R. 413 (Bankr.D.Conn.1995) discussed hereafter.

3. In a Chapter 7 case, property ceases to be property of a bankruptcy estate upon the earliest of (1) the abandonment of such property, *see* 11 U.S.C. § 554, (2) the trustee's sale of such property, *see* 11 U.S.C. § 363, or (3) a dismissal of the case, *see* 11 U.S.C. § 349(b)(3).

ty, or surrender such property shall be DE-NIED by separate order.