**In re Fred AMOAKOHENE, Debtor.**

No. 03 B 07231.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 23, 2003.

Michael J. Kalkowski, Shapiro & Kreisman, LLC, Chicago, IL, for Movant.

Fred Amoakohene, pro se.

Gregg Szilagyi, Chicago, IL, for trustee.

## MEMORANDUM OPINION AND ORDER

JACQUELINE P. COX, Bankruptcy Judge.

On February 18, 2003, Fred Amoakohene ("Amoakohene") filed the instant chapter 7 bankruptcy petition, listing Washington Mutual Bank as a secured creditor holding a lien on his town house located at 2170 East 96th Street, Chicago, Illinois 60617. On the same day, Amoakohene executed the necessary statement of intention regarding this real property, opting to retain it rather than surrender it. In order to do so, he made an offer to Washington Mutual Bank to "reaffirm" the underlying debt pursuant to 11 U.S.C. § 524(c),[1] but Washington Mutual Bank refused to accept the offer.

The refusal caused Amoakohene to file the pending "Debtor's Motion to Compel Creditor Washing Mutual to Enter into a Reaffirmation Agreement," which alleges, among other things, that he is current on his mortgage payments through the June 2003 installment, although Washington Mutual Bank has rejected his April payment of $462 (which includes a late fee) and his May payment of $445. Washing-

---

1. "(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;

(2)(A) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim; and

(B) such agreement contains a clear and conspicuous statement which advises the debtor that such agreement is not required under this title, under nonbankruptcy law, or under any agreement not in accordance with the provisions of this subsection;

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that—

(A) such agreement represents a fully informed and voluntary agreement by the debtor;

(B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

(C) the attorney fully advised the debtor of the legal effect and consequences of—

(i) an agreement of the kind specified in this subsection; and

(ii) any default under such an agreement;

(4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

(5) the provisions of subsection (d) of this section have been complied with; and

(6) (A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as—

(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

(ii) in the best interest of the debtor.

(B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property."

ton Mutual Bank has filed a cross motion for modification of the automatic stay in this case pursuant to 11 U.S.C. § 362(d)(2), which alleges that Amoakohene has no equity in the real property and that it is not necessary for an effective reorganization. According to Washington Mutual Bank, Amoakohene is in default on his note and mortgage from April on to the present, and he owes in excess of $38,000 on the town house worth approximately $45,000. These cross motions implicitly raise the legal issue of whether a chapter 7 debtor may retain his home against the objection of the mortgagee by simply remaining current on payments, or conversely, whether a mortgagee should be entitled to foreclose in pursuit of its *in rem* claim against real property only because the debtor-mortgagor has obtained a discharge of personal liability under chapter 7.

The provision of the Bankruptcy Code governing this latter issue is § 521(2), which provides as follows:

(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—

(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

(B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title . . . .

 As long as the debt secured by property of the estate is a consumer debt-that is, as long as the debt was not incurred for the purpose of a profit-seeking venture, *see In re Kelly*, 841 F.2d 908, 913 (9th Cir.1988); *In re Rathbun*, 275 B.R. 434, 437–38 (Bankr.D.R.I.2001)-this section governs a debtor's treatment of collateral regardless of whether it is real property or personal property. Although the parties here have not discussed the relevance of § 521(2), they appear to be in agreement that Amoakohene incurred the debt secured by the town house for the purpose of obtaining personal habitation and not for conducting a business venture. Amoakohene attempted to comply with this provision by informing the Court of his intent to retain the property and then offering to reaffirm the promissory note and mortgage. Because Washington Mutual Bank refused to accept the offer, Amoakohene filed the motion to compel them to do so. Nevertheless, the law is clear that a reaffirmation agreement is just that, an agreement, and the Court cannot coerce an offeree-creditor to enter the same. As one court stated:

The first clause of section 524(c) refers to "[A]n agreement between a holder of a claim and the debtor . . ." 11 U.S.C. § 524(c). The plain language of section 524(c) of the Bankruptcy Code requires that both the creditor and the debtor[ ] agree to a reaffirmation agreement. The word "agreement" typically refers

to a voluntary, mutually agreed upon action between at least two people. *In re Whatley*, 16 B.R. 394, 396 (Bankr. N.D.Ohio 1982). A debtor cannot force a creditor into a reaffirmation agreement.

*In re Hasek*, 1997 WL 1050829, at *2 (N.D.Ill.1997); *see also In re Turner*, 156 F.3d 713, 718–21 (7th Cir.1998); *In re Edwards*, 901 F.2d 1383, 1386 & n. 9 (7th Cir.1990); *In re Bell*, 700 F.2d 1053, 1056 (6th Cir.1983); *In re Schmidt*, 64 B.R. 226, 229 (Bankr.S.D.Ind.1986); *In re Lindley*, 216 B.R. 811, 816 (Bankr.N.D.Ill.1998); *In re Donley*, 131 B.R. 193, 194 (Bankr. N.D.Fla.1991); 4 Lawrence P. King et al., Collier On Bankruptcy ¶ 521.10[3] (15th ed. rev.2001). Amoakohene, therefore, through no fault of his own, has been unable to perform his intention with respect to Washington Mutual Bank's collateral within 45 days according to § 521(2)(B). He has not modified his statement of intent to opt for surrender of his home or sought additional time for performance beyond the 45–day deadline.

■■■ The other two retention options, "redemption" and "exemption," are either not applicable or not useful here. Under § 722, a debtor may only "redeem" tangible personal property. *See In re Lock*, 243 B.R. 332, 336 n. 4 (Bankr.S.D.Ohio 1999). The "exemption" option could only enable the debtor to retain property over a secured creditor's objection under very limited circumstances. First, to free the collateral from the creditor's lien and con-comitant foreclosure rights and remedies, the debtor must be able to *entirely* avoid the lien. But, under § 522(f) of the Bankruptcy Code, the debtor may only avoid liens "to the extant that such lien impairs an exemption to which the debtor would have been entitled." Whether the creditor's lien will in fact be completely or partially avoided will depend on the value of the debtor's interest in the collateral, the amount of the debt secured by the lien, and the amount of the exemption. *See* 11 U.S.C. § 522(f)(2)(A);[2] *e.g., Nelson v. Scala*, 192 F.3d 32, 33–36 & n. 2 (1st Cir.1999) (declining to avoid in full a judicial lien, even though literal language of § 522 may have led to this result, where a portion of the lien did not impair debtor's homestead exemption). Here, the amount of the Illinois homestead exemption is only $7,500, while Washington Mutual Bank's secured claim is purportedly either $27,000 or $38,000, so the bank's lien could not be completely avoided. Second, a debtor who grants consensual liens (security interests and mortgages) generally cannot overcome them using the state-law exemption scheme alone; rather, he must utilize the specific lien-avoidance powers delineated in § 522(f). *See In re Kazmierczak*, 24 F.3d 1020,,1021 (7th Cir.1994); *Nelson v. Scala*, 192 F.3d 32, 33–34 (1st Cir.1999); *Tower Loan v. Maddox (In re Maddox)*, 15 F.3d 1347, 1350–51 & n. 14 (5th Cir. 1994). Furthermore, a debtor cannot avoid consensual liens-even if they impair an exemption to which he would have been entitled but for the lien at issue-when they

---

**2.** "Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section. . . . (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien;
(ii) all other liens on the property; and
(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
exceeds the value that the debtor's interest in the property would have in the absence of any liens."

(1) are possessory, (2) are the purchase-money type, *or* (3) are attached to property other than the personal property enumerated in a very specific list of items. *See* 11 U.S.C. § 522(f)(1)(B). The lien at issue here does not qualify for lien avoidance under this section.

■ The only feasible option under § 521(2)(A), then, is to surrender the real property, which Amoakohene has not done. Amoakohene desires, either with or without reaffirmation, to simply retain possession of his home and stay current on his monthly mortgage payments, even though the present chapter 7 is discharging his *in personam* liability on the promissory note and mortgage and will prevent a future deficiency judgment should he eventually default. *See, e.g., In re Lock,* 243 B.R. 332, 333 (Bankr.S.D.Ohio 1999). This unlisted fifth option under § 521(2)(A) has been subject to a wide split of authority in the U.S. Courts of Appeals, with the collateral at stake normally being personal property such as vehicles. *Compare McClellan Fed. Credit Union v. Parker (In re Parker),* 139 F.3d 668, 673 (9th Cir.1998); *Capital Communications Fed. Credit Union v. Boodrow (In re Boodrow),* 126 F.3d 43, 53 (2d Cir.1997); *Lowry Fed. Credit Union v. West,* 882 F.2d 1543, 1547 (10th Cir.1989); *Home Owners Funding Corp. of Am. v. Belanger (In re Belanger),* 962 F.2d 345, 347–49 (4th Cir.1992) *with Bank of Boston v. Burr (In re Burr),* 160 F.3d 843, 849 (1st Cir.1998); *Johnson v. Sun Fin. Co. (In re Johnson),* 89 F.3d 249, 250 (5th Cir.1996); *Taylor v. AGE Fed. Credit Union (In re Taylor),* 3 F.3d 1512,

1517 (11th Cir.1993); *In re Edwards,* 901 F.2d 1383, 1387 (7th Cir.1990).

Of course, this Court is bound by *Edwards* regardless of its view on the merits of the legal issue. In *Edwards,* the Seventh Circuit held that because the language of § 521(2) is unambiguous and mandatory (the debtor "shall file" a statement of intent and "shall perform" such intention), the debtor may retain encumbered vehicles after a chapter 7 case only by means of one of the listed options, not by simply remaining in non-default status under the original loan and security agreement. *See id.* at 1386–87. *Edwards* approach to statutory interpretation is consistent with the numerous U.S. Supreme Court interpretations of the Bankruptcy Code following its plain language where no ambiguity is readily apparent. *United States v. Ron Pair,* 489 U.S. 235, 242–46, 109 S.Ct. 1026, 1031–33, 103 L.Ed.2d 290 (1989); *Farrey v. Sanderfoot,* 500 U.S. 291, 296, 111 S.Ct. 1825, 1828–29, 114 L.Ed.2d 337 (1991); *Owen v. Owen,* 500 U.S. 305, 311–14, 111 S.Ct. 1833, 1837–38, 114 L.Ed.2d 350 (1991); *Johnson v. Home State Bank,* 501 U.S. 78, 87, 111 S.Ct. 2150, 2156, 115 L.Ed.2d 66 (1991); *Toibb v. Radloff,* 501 U.S. 157, 160–65, 111 S.Ct. 2197, 2199–2202, 115 L.Ed.2d 145 (1991).

Some lower courts have held that the *Edwards* line of cases does not control situations when the collateral is real property. *See In re Laubacher,* 150 B.R. 200, 202–03 (Bankr.N.D.Ohio 1992); *In re Carpinella,* 201 B.R. 34, 35 n. 1 (Bankr. D.Conn.1996). *But see In re Griffin,* 143 B.R. 535, 536–37 (Bankr.E.D.Ark.1991); [3]

---

**3.** Although *Griffin* involved a mobile home, such homes may be considered real property in a bankruptcy case, depending on the nuances of state property law. *See In re Speights,* 131 B.R. 205, 207 (Bankr.N.D.Fla. 1991). Even if the mobile home were considered personal property, the Seventh Circuit

has instructed that the characterization of property as real or personal should further rather than thwart the function of federal law. *See United States v. One 1989 Stratford Fairmont,* 986 F.2d 177, 179–80 (7th Cir.1993). Here, the purpose of § 521(2) of the Bankruptcy Code as explained in *Edwards* does not

*In re Lock,* 243 B.R. 332, 334 (Bankr. S.D.Ohio 1999). A close look at the first two authorities reveals that they essentially reject the underlying rationale of the *Edwards* line of cases, which applies with equal force to all collateral within the scope of § 521(2): "consumer debts which are secured by property of the estate." The *Edwards* court took a plain-meaning approach to interpreting § 521(2), and this section does not discriminate on its face between real property and personal property. Only some of the individual options within § 521(2), such as exemption (§ 522(f)) and redemption (§ 722), employ such discrimination, which may or may not be applicable depending on a debtor's choices and factual circumstances. Moreover, the reasoning of *Edwards* has been convincingly and thoroughly expanded and vindicated by the latest U.S. Court of Appeals opinion to review the issue: the First Circuit's 1998 decision *In re Burr,* 160 F.3d 843 (1st Cir.1998). *Burr* confronted the reasoning used by the four U.S. Courts of Appeals to reject *Edwards.*

That line of cases (the "Parker line") read the "if applicable" language in § 521(2)(A)[4] to mean that the three listed retention options restrict the debtor only if the debtor chooses one; if the debtor chooses some unlisted fourth retention option, then the three listed ones are not "applicable." *See McClellan Fed. Credit Union v. Parker (In re Parker),* 139 F.3d 668, 673 (9th Cir.1998). Any other reading would (supposedly) render the "if applicable" phrase superfluous.

*See Capital Communications Federal Credit Union v. Boodrow,* 197 B.R. 409, 411–12 (N.D.N.Y.1996), *aff'd,* 126 F.3d 43 (2d Cir.1997). According to the *Parker* line of cases, the provision as a whole is merely a "procedural" provision designed to give the secured creditor notice of the debtor's intent regarding the collateral and then to provide a time line for executing this decision; therefore, it does not preclude unstated options. *See Home Owners Funding corp. of Am. v. Belanger (In re Belanger),* 962 F.2d 345, 347–48 (4th Cir.1992); *In re Carpinella,* 201 B.R. 34, 36 (Bankr.D.Conn.1996); *Capital Communications Federal Credit Union v. Boodrow,* 197 B.R. 409, 412 (N.D.N.Y.1996), *aff'd,* 126 F.3d 43 (2d Cir.1997); *cf. In re Irvine,* 192 B.R. 920, 921 (Bankr.N.D.Ill.1996) (§ 521(2) deemed only "procedural" where unstated fifth option not at issue); 4 Lawrence P. King et al., Collier On Bankruptcy ¶ 521.10[4] (15th ed. rev.2001). Supposedly, subsection 521(2)(C)[5] broadly ensures that the underlying agreement with respect to the creditor's security remains unaltered by § 521(2). *See Home Owners Funding corp. of Am. v. Belanger (In re Belanger),* 962 F.2d 345, 347–48 (4th Cir.1992); 4 King et al., Collier, *supra,* ¶ 521.10[5]. Furthermore, where the debtor has a source for maintaining regular payments and continues to insure the collateral, the secured creditor is allegedly not harmed by the debtor's choosing the unlisted fourth retention option, because

---

seem to vary depending on the characterization of the property, so the Seventh Circuit would likely conclude that mobile homes fall within the ambit of *Edwards'* holding, as did the *Griffin* court.

**4.** "[T]he debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, *if applicable,* specifying that such property is

claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property."

**5.** "(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title...."

after the bankruptcy case closes the creditor will continue to be able to repossess or foreclose on the collateral if the debtor ceases making payments; the parties thus remain in roughly the same position as existed prepetition. *See Capital Communications Federal Credit Union v. Boodrow,* 197 B.R. 409, 411–13 (N.D.N.Y.1996), *aff'd,* 126 F.3d 43 (2d Cir.1997); *In re Laubacher,* 150 B.R. 200, 203 (Bankr.N.D.Ohio 1992); *In re Carpinella,* 201 B.R. 34, 36 (Bankr. D.Conn.1996). Finally, the approach to § 521(2) permitting retention of collateral during the pendency of a bankruptcy case on the basis of the unstated option (exclusive of surrender and the three listed retention options) is consistent with the general goal of the Bankruptcy Code which balances the rights of creditors and debtors in favor of a fresh start. *See Capital Communications Federal Credit Union v. Boodrow,* 197 B.R. 409, 412 (N.D.N.Y.1996), *aff'd,* 126 F.3d 43, 51 (2d Cir.1997).

■ Several weaknesses nonetheless abound in this line of reasoning. The Bankruptcy Code balances debtor-creditor rights in very specific ways that are actually inconsistent with permitting the unstated fifth "retain and maintain" option. Simply labeling § 521(2) as "procedural" or as intended only to give secured creditors notice does not help in analyzing the statutory construction problems inherent in § 521(2), because such conclusory labels oversimplify the subsection and obscure its role in the way that the Code, as a coherent whole, treats secured creditors. In addition to providing notice, it also mandates that the debtor choose between retention and surrender and then perform the intention. Because of this mandate, the subsection aids secured creditors in ways that go beyond just providing them notice of intent; it gives them a substan-

tive right to have the intent effectuated within time frames that avoid prejudice to the value of secured creditors' interests in collateral.

This substantive right is consistent with other provisions of the Bankruptcy Code that are designed to ensure that when a debtor files a bankruptcy case, a secured creditor will eventually receive at least the same value that its collateral was worth at the time of filing. Immediately after a petition is filed, the value of a § 506(a) "secured claim" is prevented from diminishing by the "adequate protection" right in § 361 and the related provisions in § 362(d)(1) ("cause" for relief from the automatic stay), § 363(e) (protection of collateral used, sold, or leased by debtor), § 507(b) (super-priority administrative-claim status when adequate protection fails), and § 364(d) (protection for secured creditor with lien that the trustee has primed in order to obtain postpetition lending). The "surrender" option under § 521(2) continues to fulfill this goal by simply transferring to the secured creditor the collateral itself, as do the reorganization-plan options available under § 1325(a)(5)(C) and § 1129(2)(A)(iii). The "redemption" option fulfills this goal by requiring the debtor to make a lump-sum payment of the § 506(a) secured claim, which is the lesser of the fair market value of the collateral and the outstanding amount of the debt, *see In re Edwards,* 901 F.2d 1383, 1385 (7th Cir.1990). The "reaffirmation" option protects the secured creditor's right to receive the current value of the collateral by resurrecting the debtor's personal liability on the debt in addition to maintaining the lien and the state-law remedies of repossession and foreclosure. For the two reasons discussed above, the "exemption" option will rarely by itself entitle the debtor to retain collateral over the objection of the secured

creditor,[6] but when the debtor does successfully avoid a lien *in its entirety* pursuant to § 522(f), a § 506(a) "secured claim" no longer even exists to protect. *See In re Maddox,* 15 F.3d 1347, 1352 (5th Cir.1994). The "cram down" provisions of the reorganization chapters, § 1129(b)(2)(A) and § 1325(a)(5)(B), also fulfill this goal by forcing a debtor who desires to retain collateral to pay (over the course of the plan) the value of the collateral at the time of plan confirmation plus interest; the secured creditors retain their liens throughout the payment period, as well. During the interim periods before plan confirmation or before the exercise of the debtor's § 521(2) option, the "adequate protection" provision in § 361 and other related sections preserve this value.

■ The mandatory language of § 521(2) does more than provide notice and procedure: it "contemplates performance." *In re Edwards,* 901 F.2d 1383, 1386 (7th Cir.1990). By doing so, it attempts to guarantee that secured creditors will receive the approximate fair market value of their collateral calculated as of the time that the debtor filed a bankruptcy petition, as do the other provisions just discussed. Yet, the unstated fifth option in § 521(2) departs considerably from this goal by creating a new credit arrangement that so greatly favors debtors that it rarely exists outside of bankruptcy to the general consumer. *See In re Lock,* 243 B.R. 332, 335 (Bankr.S.D.Ohio 1999). That is, this option, in conjunction with a chapter 7 discharge, changes a recourse loan to a nonrecourse loan. *See In re Price,* 281 B.R. 240, 246, 248 (Bankr.D.Del.2002). The secured creditor may end up never receiving the amount its § 506(a) "secured claim" was worth at the commencement of the bankruptcy case, because the collateral could be losing value from depreciation while the debtor temporarily makes payments at a rate lower than the rate of the value decline; meanwhile, the debtor's incentive to avoid misuse of the collateral has been reduced by the chapter 7 discharge of personal liability.[7] *See In re Edwards,* 901 F.2d 1383, 1386 (7th Cir. 1990); *In re Donley,* 131 B.R. 193, 194 (Bankr.N.D.Fla.1991); *In re Price,* 281 B.R. 240, 246 (Bankr.D.Del.2002). Then, if and when the former debtor begins miss-

---

**6.** The two significant limitations on using exemption as a device to retain collateral are the fact that (1) only certain specific types of liens may be avoided and (2) the liens that do fall in these categories may only be avoided *to the extent that* they impair exemptions under the formula provided in § 522(f)(2). For this reason, the following statements in Collier On Bankruptcy are overly broad: "[The *Edwards* line of cases] ignores the language in section 521(2) giving the debtor the option of stating an intention to claim the property as exempt and to perform that intention within the 45–day period. The debtor could thus fully satisfy the mandate of section 521(2) by stating an intention to retain the property and claim it as exempt, and then making the claim of exemption within 45 days.... Congress, in enacting section 521(2), certainly did not intend to impair the debtor's right to avoid liens under section 522." 4 Lawrence P. King et al., Collier On Bankruptcy ¶ 521.10[5] (15th

ed. rev.2001). A debtor can indeed retain property by exempting it, but he must also be able to entirely avoid any lien using § 522(f) in order to have this option. As a practical matter, this situation will rarely present itself given the inherent limitations of the section.

**7.** The *Carpinella* decision responds by pointing out that "[o]f course the possibility and progression of collateral depreciation is an integral component of the calculus which ultimately determines the terms-most notably, the principal amortization schedule-of loan agreements." *In re Carpinella,* 201 B.R. 34, 36 (Bankr.D.Conn.1996). No less an integral component of the calculus, though, is the assumption that the debtor-mortgagor will be personally liable on the debt, and without this assumption, the principal amortization schedule would very likely reflect the increased risk to the lender.

ing payments down the road, the secured creditor's repossession/foreclosure rights will be worth considerably less than the § 506(a) "secured claim" it once had, but it will not be able to offset the diminution with the personal liability of the former debtor, *see In re Donley*, 131 B.R. 193, 194 (Bankr.N.D.Fla.1991), or with the legal protections of a reorganization plan, *see, e.g.*, 11 U.S.C. § 1329(b)(1) (restriction in chapter 13 cases on modification of plan payments) & § 1328(b)-(c) (restrictions imposed when chapter 13 debtor attempts to receive a "hardship discharge" before completing plan payments). Under the unstated fifth option of § 521(2), the chapter 7 debtor receives the retention benefits of a chapter 13 plan while the secured creditor receives none of the legal protections that chapter would afford. *Cf. In re Bell*, 700 F.2d 1053, 1057 (6th Cir.1983). For instance, a chapter 13 case would require the debtor to have a stable source of income. *See* 11 U.S.C. § 109(e) (West 2003). Creditors such as Washington Mutual Bank with a security interest in the debtor's primary residence would receive special protection against the alteration of their contractual rights, which normally would include the debtor's ongoing personal liability. *See* 11 U.S.C. § 1322(b)(2), (5), § 1328(a)(1). An undersecured creditor holding a lien would have the right to force the debtor to pay all of his projected disposable income for three years toward unsecured claims, including such creditor's bifurcated § 506(a) "unsecured claim." *See* 11 U.S.C. § 1325(b).[8]

Furthermore, the unlisted fifth option under § 521(2) is such a favorable credit arrangement for a debtor when compared to surrender, redemption, reaffirmation, or a chapter 13 plan that one would wonder why a debtor would ever elect one of these latter options instead. *See Bank of Boston v. Burr (In re Burr)*, 160 F.3d 843, 847 (1st Cir.1998); *In re Price*, 281 B.R. 240, 248 (Bankr.D.Del.2002); *In re Edwards*, 901 F.2d 1383, 1387 (7th Cir.1990); *In re Lock*, 243 B.R. 332, 334 (Bankr.S.D.Ohio 1999). This unlisted fifth option, though, is surprisingly no where delineated in the Bankruptcy Code, while the other potential, less favorable retention options-which presumably would be chosen less frequently-have requirements spelled out in great detail in § 722, § 522(f), and § 524(c).[9]

8. The protections that a straight chapter 13 would afford a secured creditor can be circumvented to some extent using a (perhaps unintended) quirk in the Bankruptcy Code that permits a "chapter 20"-a chapter 7 bankruptcy case followed very quickly by a chapter 13 case. *See Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 2155–56, 115 L.Ed.2d 66 (1991). The chapter 7 turns a recourse loan held by a secured creditor into a nonrecourse loan, and then the chapter 13 case treats the installment payments due on this debt through a payment plan while the automatic stay prevents repossession or foreclosure. *See id.* at 80–83, 111 S.Ct. 2150. Even then, (1) the concept of adequate protection guards the value of the secured creditor's interest in the collateral, (2) the debtor would need to have a stable source of income in the chapter 13 case, (3) the holders of mortgages on primary residences could only have their secured claims prospectively modified to the extent that the debtor pays arrears through the course of the plan, and (4) other secured creditors not protected by the anti-modification clause would be entitled to plan payments equaling the present value of the collateral under § 1325(a)(5) and § 506(a).

9. The lack of detail regarding the unstated fifth option in § 521(2) is no insignificant omission, given the fact that the mortgagee and the chapter 7 debtor must maintain some type of post-discharge relationship with undefined parameters based on the existing promissory note and mortgage agreement. For instance, various actions by the mortgagee may or may not be considered "an act to collect, recover or offset any such debt as a personal liability of the debtor," including sending a default notice for missed payments, increasing the interest rate on a variable-rate

*See Bank of Boston v. Burr (In re Burr)*, 160 F.3d 843, 847 (1st Cir.1998); *In re Price*, 281 B.R. 240, 248 (Bankr.D.Del. 2002); *In re Lock*, 243 B.R. 332, 335 (Bankr.S.D.Ohio 1999). In other chapters, Congress has enacted detailed cramdown provisions that permit non-reaffirming debtors to retain collateral over secured lenders' objections. *See* 11 U.S.C. § 1322(b)-(c), § 1325(a), & § 1129(b)(2); *In re Price*, 281 B.R. 240, 248 (Bankr. D.Del.2002); *In re Lock*, 243 B.R. 332, 335 (Bankr.S.D.Ohio 1999). Additionally, this unlisted fifth option of simply maintaining payments for the life of the underlying contract without any personal liability is not capable of any substantial performance within 45 days after the debtor files the notice of intent, as required by § 521(2)(B).[10] *In re Price*, 281 B.R. 240, 247 & n. 8 (Bankr.D.Del.2002); *Bank of Boston v. Burr (In re Burr)*, 160 F.3d 843, 846–47 (1st Cir.1998); *In re Price*, 281 B.R. 240, 246–47 (Bankr.D.Del.2002); *In re Lock*, 243 B.R. 332, 334 (Bankr.S.D.Ohio 1999). The most logical conclusion is that Congress, in enacting § 521(2), had no intent to allow some undelineated fifth option (or fourth option under the "retention" rubric).

The language of § 521(2) itself does not contradict this conclusion, as the *Parker* line of cases has suggested. The contentious "if applicable" language is capable of a very reasonable interpretation that is not at odds with this conclusion and does not render the phrase superfluous. When § 521(2)(B) states that "the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property," it simply means that if the debtor chooses the surrender option, then the three listed retention options are not "applicable," not that the debtor may choose some unstated option. *See Bank of Boston v. Burr (In re Burr)*, 160 F.3d 843, 847–48 (1st Cir.1998); *In re Lock*, 243 B.R. 332, 334 (Bankr.S.D.Ohio 1999). A further interpretation of "if applicable" consistent with the *Edwards* approach looks to see whether the three explicitly listed retention options are "applicable" according to their own terms. For instance, if the debtor desires to retain real property or commercially used personal property, then redemption pursuant to § 722 is not "applicable." If the secured creditor does not consent to a reaffirmation agreement (as here) or if the chapter 7 debtor's discharge has already been granted, then reaffirmation pursuant to § 524(c) is not "applicable." If the secured creditor holds a judicial lien for alimony or a purchase-money security interest, then the avoidance of liens impairing exemptions pursuant to § 522(f) is not "applicable."

Section 521(2)(C) also does not contradict this conclusion, as the *Parker* line of cases has suggested, by impermissibly altering state-law contractual rights from

---

loan, and increasing the amount of any tax and insurance escrow. 11 U.S.C. § 524(a); *see In re Lock*, 243 B.R. 332, 335 (Bankr. S.D.Ohio 1999).

**10.** Within such 45 days, the court may extend the time for performance of the debtor's election for "cause." However, the length of the extension that Congress had in mind was probably not the several years' worth of time

likely remaining on installment contracts to purchase homes and vehicles. *See In re Boodrow*, 126 F.3d at 59 (Shadur, J. dissenting). Chapter 7 cases of individuals-and particularly no-asset cases such as the present one-almost never even remain open for a long enough period to monitor a debtor's continued performance of his declared intention to remain current for the remainder of the installment period.

consumer notes and security agreements. This subsection of 521(2) states, "[N]othing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title...." The rights regarding collateral that must not be altered by § 521(2) are clearly the ones *under this title*, not the state-law contractual rights from consumer notes and security agreements. *See Bank of Boston v. Burr (In re Burr)*, 160 F.3d 843, 848 (1st Cir.1998); *In re Price*, 281 B.R. 240, 246 (Bankr.D.Del. 2002). Furthermore, § 521(2) does not modify the requirements for redemption (§ 722), reaffirmation (§ 524(c)), or the avoidance of liens impairing exemptions (§ 522(f)), nor does it modify the requirements of other Bankruptcy Code sections not explicitly referenced in § 521(2), such as the automatic-stay relief provision (§ 362(d)). *Cf. In re Price*, 281 B.R. 240, 246, 248 (Bankr.D.Del.2002). Moreover, state-law contractual rights from consumer notes and security agreements are indeed modified by the Bankruptcy Code, but not in the most significant respects *by § 521(2)*. Rather, they are more substantially modified by dozens of other Code sections, the most important of which are the automatic stay, the discharge injunction, the lien-avoidance provisions of chapter 5 (including those for liens impairing exemptions under § 522(f)), and the cramdown provisions in chapter 11 and 13 cases. Thus, an interpretation of § 521(2) that declines to recognize some unstated fifth "maintain and retain" option does not interrupt the debtor's state-law right to hold onto collateral when he is current on payments; his decision to file a chapter 7 bankruptcy petition interrupts this right.

Overall, § 521(2)'s language and consistency with the overall scheme of the Bankruptcy Code render its mandatory language unambiguous. Thus, the Court need not delve into legislative history in order to construe it. *See United Air Lines v. McMann*, 434 U.S. 192, 199, 98 S.Ct. 444, 448, 54 L.Ed.2d 402 (1977); *Bank of Boston v. Burr (In re Burr)*, 160 F.3d 843, 849 (1st Cir.1998); *In re Kelly*, 841 F.2d 908, 912 (9th Cir.1988); *Valentine v. Mobil Oil Corp.*, 789 F.2d 1388, 1391 (9th Cir.1986). The unambiguous mandatory language coupled with a list of specific options is even more convincing when viewed in light of other Bankruptcy Code sections that demonstrate that Congress knows how to create nonexclusive lists when it intends to do so. *See, e.g.,* 11 U.S.C. § 102(3), § 707(a), § 330(a)(3), & § 1307(c) (West 2003).

Finally, the fact that chapter 7 debtors may not be able to hold on to property subject to liens is not unfair, as some opinions following the *Parker* line of cases have implied, *see, e.g., In re Laubacher*, 150 B.R. 200, 202–03 (Bankr.N.D.Ohio 1992), in light of the fact that (1) the purpose of chapter 7 cases, unlike chapter 13 cases, is liquidation, not reorganization, and (2) debtors receive a discharge of personal liability as part of their bargain with the bankruptcy system. *Cf. Bank of Boston v. Burr (In re Burr)*, 160 F.3d 843, 848 (1st Cir.1998). The Court, in conclusion, rejects *In re Laubacher*, 150 B.R. 200 (Bankr.N.D.Ohio 1992), and *In re Carpinella*, 201 B.R. 34 (Bankr.D.Conn.1996), which in turn reject the application of the *Edwards* case line to real property.

Under § 521(2), therefore, Amoakohene was required to elect between reaffirmation and surrender (the two potentially applicable options under the facts of this case) and then perform the intention within 45 days thereafter. The effect of subsection 521(2)(C), discussed *supra*, is that a debtor who opts for reaffirmation must comply with every aspect of § 524(c), which requires an "agreement" to fully perform the option. Through no fault of

his own, Amoakohene could not persuade the secured creditor, Washington Mutual Bank, to enter into such an agreement, so Amoakohene was not able to fulfill his stated intention. Nor did he "surrender" the collateral.

This situation raises the issue of what remedy Congress intended for violations of § 521(2), an issue that has baffled numerous courts, *see, e.g., In re Donnell,* 234 B.R. 567, 571 (Bankr.D.N.H.1999). Various theories of relief have been analyzed in case law. Modification of the automatic stay for "cause" under § 362(d)(1) has been consistently found to be the most appropriate form of relief for "garden variety" violations of § 521(2). *See BankBoston, N.A. v. Claflin (In re Claflin),* 249 B.R. 840, 849 (1st Cir. BAP 2000); *In re Lock,* 243 B.R. 332, 336 (Bankr.S.D.Ohio 1999); *In re Weir,* 173 B.R. 682, 690, 693 (Bankr.E.D.Cal.1994); *In re Irvine,* 192 B.R. 920, 922 (Bankr.N.D.Ill.1996); *In re Weir,* 173 B.R. 682, 684 (Bankr.E.D.Cal. 1994); *In re Donnell,* 234 B.R. 567, 572, 574–75 (Bankr.D.N.H.1999); *In re Rathbun,* 275 B.R. 434, 436, 438 (Bankr.D.R.I. 2001).

In more compelling circumstances, a bankruptcy court could use its § 105(a) power to issue a mandatory injunction or specific-performance decree ordering the debtor to perform his stated intent (or to state a legally applicable § 521(2) option); however, the result of noncompliance would unfortunately be a severe contempt-of-court sanction, the use of U.S. Marshals, and/or a denial of discharge under § 727(a)(6)(A). *See Bank-Boston v. Claflin (In re Claflin),* 249 B.R. 840, 848–49 (1st Cir. BAP 2000); *In re Weir,* 173 B.R. 682, 690–91 (Bankr. E.D.Cal.1994); *In re Donnell,* 234 B.R. 567, 572, 576 (Bankr.D.N.H.1999). These § 521(2) remedies have been described as impracticable and disproportionate when applied to a debtor who is willing to continue to be current on installment obligations. *See In re Weir,* 173 B.R. 682, 691 (Bankr. E.D.Cal.1994); *In re Irvine,* 192 B.R. 920, 921–22 & n. 3 (Bankr.N.D.Ill.1996); *In re Rathbun,* 275 B.R. 434, 438 (Bankr.D.R.I. 2001). Also, the court would need to lift the stay even if the debtor did comply with a surrender injunction or a contempt judgment, because the stay prohibits creditors holding repossessed collateral from actually selling the property to satisfy the lien. *See In re Donnell,* 234 B.R. 567, 572–73 (Bankr.D.N.H.1999). Relief from the automatic stay by itself is the preferred remedy in the first place. *See id.*

In other compelling circumstances, bankruptcy courts have also dismissed the case under § 707(a) because the § 521(2) failure was considered an "unreasonable delay by the debtor that is prejudicial to creditors." 11 U.S.C. § 707(a)(1) (West 2003); *see In re Donnell,* 234 B.R. 567, 573–74 (Bankr.D.N.H.1999); *e.g., In re Green,* 119 B.R. 72, 73–74 (Bankr.D.Md. 1990). Again, this remedy is seen as extraordinary relief, as the result will normally be that the debtor will not be able to receive a discharge of personal liability until a subsequently filed case, *see* 11 U.S.C. § 349(a), and a creditor who is regularly paid for the purpose of retaining collateral is not being severely harmed. *See also In re Weir,* 173 B.R. 682, 691 (Bankr.E.D.Cal.1994); *In re Rathbun,* 275 B.R. 434, 438 (Bankr.D.R.I.2001). Other possibilities have included an exception to discharge for the particular debt at issue on the basis of "willful and malicious injury" to the creditor's collateral. *See* 11 U.S.C. § 523(a)(6). This possibility will also not usually be available when the debtor is willing to remain current on installment obligations in order to retain and use collateral. *Cf. In re Lock,* 243 B.R. 332, 336 (Bankr.S.D.Ohio 1999); *In re*

*Donnell,* 234 B.R. 567, 574 (Bankr.D.N.H. 1999).

Finally, under the terms of § 704(2)-(3) and § 521(4), the chapter 7 case trustee is granted the duties of (1) ensuring that the debtor performs his stated intention regarding the collateral and (2) receiving the surrender of estate property. Thus, the language of the statute contemplates the trustee, not the creditor, as demanding the debtor's compliance and receiving surrendered collateral in the first instance, *see BankBoston, N.A. v. Claflin (In re Claflin),* 249 B.R. 840, 848 n. 6 (1st Cir. BAP 2000); *In re Donnell,* 234 B.R. 567, 575–76 (Bankr.D.N.H.1999), but the enforcement mechanism itself has been recognized as being anything but coercive or efficacious, *see In re Price,* 281 B.R. 240, 243 n. 5 (Bankr.D.Del.2002); 4 Lawrence P. King et al., Collier On Bankruptcy ¶ 521.10[4] (15th ed. rev.2001), and creditors have been permitted to bring actions requesting the above remedies. *Cf. In re Donnell,* 234 B.R. 567, 572 n. 8 (Bankr. D.N.H.1999) (speculating that the trustee does not have exclusive statutory standing for seek enforcement of § 521(2)). Particularly when, as here, the trustee has abandoned the estate's interest in collateral by means of a no-asset report and has no power to compel the creditor to enter into a reaffirmation agreement, the trustee's aid in enforcing § 521(2) will be little more than operating as a conduit for communication between a *pro se* debtor and the secured creditor. *Cf. In re Donnell,* 234 B.R. 567, 571 & n. 6 (Bankr.D.N.H. 1999).

 Scenarios where debtors cannot possibly perform their stated § 521(2) intent undoubtedly occur. *See* 4 Lawrence P. King et al., Collier On Bankruptcy ¶ 521.10[3] (15th ed. rev.2001). The present scenario is one. Amoakohene, however, did make a good-faith attempt at executing the reaffirmation option but was unable to procure the bank's consent. The extraordinary remedies mentioned above are therefore not appropriate to deal with such a technical violation of § 521(2). Relief from the automatic stay is appropriate, and, in fact, the secured creditor herein has made such a request (albeit on § 362(d)(2) grounds, not on a § 362(d)(1) "for cause" basis).

 Relief from the automatic stay is in reality not that much of an additional burden on the debtor for two reasons. Under § 362, the stay of an act to enforce a lien securing a prepetition debt must await (1) the trustee's abandonment of the estate property constituting the collateral and (2) the grant or denial of the debtor's discharge (or the closing or dismissal of the case). *See* 11 U.S.C. § 362(a)(3)–(5), (c)(1)–(2) (West 2003). "Upon the entry of the no-asset report, a trustee effectively abandons any interest the bankruptcy estate has in property. *See Cooper v. Walker (In re Walker),* 151 B.R. 1006, 1008 (Bankr.E.D.Ark.1993)." *Helms v. Arboleda (In re Arboleda),* 224 B.R. 640, 645 (Bankr.N.D.Ill.1998). Normally a chapter 7 debtor will receive a bankruptcy discharge 60 days after the first date set for the § 341 creditors' meeting (the deadline for objections to discharge). *See* Fed. R. Bankr.Pro. 4004(a), (c). Once abandonment and discharge both occur, § 362(c) automatically dissolves the portion of the stay restraining secured creditors from pursuing their *in rem* claims.[11] The dis-

---

11. One bankruptcy court opinion has asserted that a secured creditor may begin to enforce its lien on a debtor's property as soon as the debtor receives a discharge. *See In re Weir,* 173 B.R. 682, 692 (Bankr.E.D.Cal.1994). However, the secured creditor must additionally be certain that the trustee has abandoned the relevant collateral from the bankruptcy

charge injunction of § 524(a)(2) will indeed replace the automatic stay, but the discharge injunction, unlike the automatic stay, does not restrict the pure enforcement of valid, surviving liens on a debtor's property. *Compare* § 362(a) *with* § 524(a)(2). *See In re Weir,* 173 B.R. 682, 692–93 (Bankr.E.D.Cal.1994). In this case, the trustee entered a no-asset report on April 22, 2003, and June 3, 2003 was the objection deadline 60 days after the § 341 meeting. No dischargeability complaints or objections have been filed, but neither has the clerk's office formally issued or docketed the discharge order for the debtor. Nevertheless, this discharge order will apparently be soon forthcoming. When it does, the debtor will be in the same situation he is now in as a result of the order, issued *infra,* modifying the automatic stay to permit Washington Mutual Bank to pursue its state-law remedies.

The second reason that relief from the stay may not in the end prevent Amoakohene from "retaining and maintaining" is that Washington Mutual Bank might not be able to obtain a state-court foreclosure judgment on the basis of any contractual default. If Amoakohene can demonstrate that in spite of Washington Mutual Bank's refusal to accept certain tendered installments, he was substantially current on mortgage payments, Washington Mutual Bank may not be able to establish enough arrearage to constitute a material contractual default. *See In re Weir,* 173 B.R. 682, 684, 689–92 & n. 17 (Bankr.E.D.Cal.1994). If that is the case-and the parties herein are in dispute on this purely factual issue-the question of default will turn on the presence or absence of an *ipso facto* clause (a provision declaring the filing of a bankruptcy petition to be an event of default or

termination) in the promissory note and/or mortgage agreement. *See, e.g., Bank of Boston v. Burr (In re Burr),* 160 F.3d 843, 844 (1st Cir.1998). Courts have been uncertain about the enforceability of such clauses outside the context of § 365 motions to assume or assign executory contracts, such as when the trustee abandons estate property that includes contracts with *ipso facto* clauses. *See* 11 U.S.C. § 365(b)(2), (e)(1), § 541(c)(1). *Cf. In re Bell,* 700 F.2d 1053, 1058 (6th Cir.1983) (finding clause enforceable) *with Lowry Federal Credit Union v. West,* 882 F.2d 1543 (10th Cir.1989) (declining to determine whether such clauses are enforceable); *In re Weir,* 173 B.R. 682, 692 & n. 24 (Bankr.E.D.Cal.1994) (same). That is a question for another day. Right now, the relief from the automatic stay granted herein is simply noteworthy because it might not have any adverse impact on the debtor at all, and this fact counterbalances the rather strict nature of § 521(2) as applied to the principal residences of chapter 7 debtors.

## ORDER

Having read the motion filed in this matter, having received and examined the memoranda of law submitted by the parties in support of their respective positions, having heard the arguments of counsel, and having been fully advised in the premises, the Court hereby finds as follows:

1. Debtor Fred Amoakohene's motion to compel Washington Mutual Bank to enter into a reaffirmation agreement is denied.

2. The automatic stay is modified to the extent necessary to allow Washington Mutual Bank to enforce the mortgage on

estate (by means of a no-asset report or otherwise), or it will be violating the automatic stay by enforcing a lien against property of the

estate or by exercising control over property of the estate. *See* 11 U.S.C. § 362(a)(3)–(4), (c)(1) (West 2003).

the real property commonly known as 2170 East 96th Street, Chicago, Illinois 60617.

3. Bankruptcy Rule 4001(a)(3) is not applicable to this order.