**In re Ralph Eugene CHUBB and Roberta Fitts Chubb, Debtors.**

**In re Harold S. Davis, Jr. and Terri Ann Davis, Debtors.**

**Nos. 04–21945, 04–22357.**

United States Bankruptcy Court, E.D. Tennessee.

Sept. 9, 2004.

Alan C. Lee, Morristown, TN, for Ralph and Roberta Chubbs and Harold and Terri Davis.

O. Taylor Pickard, Wilson, Worley & Gamble, P.C., Kingsport, TN, for Eastman Credit Union.

MARCIA PHILLIPS PARSONS, Bankruptcy Judge.

### MEMORANDUM

These two chapter 7 cases present an issue that has been considered by numerous courts, including at least nine circuit courts of appeal: whether a debtor who is current on his secured debt can retain the collateral of a secured creditor simply by continuing to make contractual payments on the debt. Because this court concludes that 11 U.S.C. § 521(2) interpreted in light of the Sixth Circuit Court of Appeals' decision in *General Motors Acceptance Corp. v. Bell (In re Bell)*, 700 F.2d 1053 (6th Cir.1983), does not permit this result, the creditor's motions for relief from the automatic stay will be granted. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A) and (G).

## I.

Ralph and Roberta Chubb filed for bankruptcy relief under chapter 7 on June 1, 2004. In their Schedule D, which pertains to creditors holding secured claims, the Chubbs listed three obligations to Eastman Credit Union: a debt of $66,042 secured by a first deed of trust on the Chubbs' residence valued at $90,000; a debt of $16,694 secured by a second deed of trust on the same realty; and a debt of $4,312 secured by a lien on a 1999 Chevrolet Malibu automobile valued at $3,000. In their statement of intention filed pursuant to 11 U.S.C. § 521(2), the Chubbs indicated that the house was claimed as exempt and that they would be retaining the house and Chevrolet automobile, with the original debts kept current.

On June 29, 2004, Eastman Credit Union filed a motion for relief from the automatic stay both with respect to the house and automobile. The basis of the Credit Union's motion is two-fold: first, that relief should be granted under 11 U.S.C. § 362(d)(2) in that the debtors do not have equity in the properties and they are not necessary for an effective reorganization since this is a chapter 7 liquidation case. Second, the Credit Union observes that although the Chubbs' statement of intention provides that the house and automobile will be "retained," the statement fails to indicate whether the retention will be accomplished by redemption or reaffirmation. Accordingly, the Credit Union asserts that the Chubbs have failed to comply with 11 U.S.C. § 521(2) and therefore, must surrender the house and automobile.

On July 8, 2004, the Chubbs filed a response to the Credit Union's motion, stating they are current on all of the loans that are the subject of the stay relief motion and that insurance is in place to protect the Credit Union's collateral. They reject the assertion that § 521(2) of the Bankruptcy Code requires either redemption or reaffirmation and maintain that they may retain the house and automobile merely by continuing to make contractual payments to the Credit Union, notwithstanding that their personal liability on the debts will be discharged through this bankruptcy case. They agree that there is little or no equity in the collateral and state that as such, it would not be in their best interest to enter into reaffirmation agreements. Furthermore, the Chubbs contend that the Credit Union's motion is an attempt to force them to enter into reaffirmation agreements in violation of the "fresh start" provided them by a chapter 7 discharge; that the Credit Union will be unable to proceed with foreclosure because they are not in default; and that granting the motion would force them to choose between losing their property or converting their case to chapter 13. Accordingly, the Chubbs request that the Credit Union's stay relief motion be denied.

At a hearing on the Credit Union's motion and the Chubbs' response held on August 31, 2004, the parties announced that all material facts would be stipulated by the parties to enable the court to rule on the legal issues raised in the motion. Specifically, the parties stipulated that the Chubbs are current on all three of their obligations to the Credit Union, that there is no equity in the house or automobile, and the documents attached to the proofs of claim filed by the Credit Union are admissible as evidence to be considered by this court.

Also before the court is the chapter 7 case of Harold and Terri Davis, who share the same bankruptcy attorney with the Chubbs. The Davises filed for bankruptcy relief on July 7, 2004, listing in Schedule D a debt to Eastman Credit Union in the amount $19,000, secured by a lien on a

2001 Ford F150 truck valued at $16,000. As in the Chubbs' bankruptcy case, the Davises' statement of intention indicated that the truck would be retained and the debt kept current. On July 29, 2004, Eastman Credit Union filed a motion for relief, similarly based on § 362(d)(2) and the Davises' alleged failure to comply with § 521(2) of the Bankruptcy Code. The Davises responded to the motion, requesting that it be denied and arguing that § 521(2) permits a debtor to retain collateral without reaffirming the debt or redeeming the property.

At a hearing on August 31, 2004, the parties stipulated on the record that the Davises are current in their monthly payments to the Credit Union, that there is little or no equity in the Ford truck, and that the agreements and promissory note attached to the Credit Union's proof of claim are admissible. All parties have filed briefs and the issues are ripe for resolution. Additionally, it should be noted that in both the Chubbs and the Davises' cases, the chapter 7 trustees have filed no-asset reports, thereby abandoning any interest that the bankruptcy estates may have in the collateral Eastman Credit Union seeks to recover.

## II.

■ This court will first address the Credit Union's contention that relief from the stay is appropriate in these two cases because the debtors have failed to comply with 11 U.S.C. § 521(2). Section 521 of the Bankruptcy Code, entitled "Debtor's duties," provides in part the following:

The debtor shall—

. . .

(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—

(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

(B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title.

11 U.S.C. § 521(2).

The courts generally agree regarding the initial duty placed upon a debtor by § 521(2)(A), that within the time specified, an individual chapter 7 debtor with consumer debts secured by property of the estate[1] must file a statement of his intention with respect to the retention or surrender of such property. There is sharp disagreement, however, as to the proper

---

1. Although not stipulated by the parties, there has been no contention that the obligations of the Chubbs and Davises to Eastman Credit Union are not "consumer debts ... secured by property of the estate," within the meaning of § 521(2).

interpretation of the next phrase in § 521(2)(A) which begins with the words "if applicable." As quoted above, in addition to indicating whether he intends to retain or surrender a secured creditor's collateral, § 521(2)(A) directs a debtor to, "*if applicable,* specif[y] that such property is claimed as *exempt,* that [he] intends to *redeem* such property, or that [he] intends to *reaffirm* debts secured by such property." (Emphasis supplied.) As succinctly phrased by the Third Circuit Court of Appeals in *Price:*

> The trouble lies with the phrase "if applicable." Do those words merely indicate that the three options—exemption, redemption, and reaffirmation—are relevant when a debtor intends to retain and not applicable when a debtor chooses to surrender the collateral? If so, section 521(2)(A) sets out an exhaustive set of retention options. Or does "if applicable" mean "if" the debtor wishes to choose any of the three options that follow on its heels, i.e., when redemption, reaffirmation, and exemption "apply," that intention must be specifically stated? If the latter construction is correct, then section 521(2)(A) leaves available other methods of retention, such as by keeping the loan current.

*Price v. Del. State Police Fed. Credit Union (In re Price),* 370 F.3d 362, 370 (3rd Cir.2004).

The courts of appeal in the second, third, fourth, ninth, and tenth circuits have held that "if applicable" means only if the debtor decides to choose one of the options specified in § 521(2)(A) and that therefore, the debtor may choose other options not delineated, such as retention through the continuation of contractual payments. *See In re Price,* 370 F.3d 362; *McClellan Fed. Credit Union v. Parker (In re Parker),* 139 F.3d 668 (9th Cir.1998); *Capital Communications Fed. Credit Union v. Boodrow*

*(In re Boodrow),* 126 F.3d 43 (2nd Cir. 1997); *Home Owners Funding Corp. of Am. v. Belanger (In re Belanger),* 962 F.2d 345 (4th Cir.1992); *Lowry Fed. Credit Union v. West,* 882 F.2d 1543 (10th Cir.1989). On the other hand, the first, fifth, seventh, and eleventh circuits have concluded that the list of options set forth in § 521(2)(A) provide the only means for a chapter 7 debtor to retain property which is collateral for a consumer debt. *See Bank of Boston v. Burr (In re Burr),* 160 F.3d 843 (1st Cir.1998); *Johnson v. Sun Fin. Co. (Matter of Johnson),* 89 F.3d 249 (5th Cir.1996); *Taylor v. AGE Fed. Credit Union (In re Taylor),* 3 F.3d 1512 (11th Cir.1993); *Matter of Edwards,* 901 F.2d 1383 (7th Cir.1990).

The Sixth Circuit Court of Appeals has not ruled on the proper interpretation of § 521(2). However, in a decision rendered by that court in 1983, a year prior to Congress' enactment in 1984 of § 521(2), the Sixth Circuit held that "redemption and reaffirmation constituted the exclusive methods pursuant to which the [chapter 7 debtors] could retain possession of the secured collateral." *In re Bell,* 700 F.2d at 1058.

The precise issue before the court in *Bell* was "whether redemption of secured collateral in a Chapter 7 bankruptcy proceeding may be achieved through installment payments." *Id.* at 1054. The debtors in *Bell* owned a Chevrolet van financed through GMAC and at the time of their bankruptcy filing, were current on the monthly installment payments due under the contract with GMAC. After the bankruptcy trustee abandoned the estate's interest in the van, GMAC filed a complaint to recover the van from the debtors, to which the debtors responded with a request to the bankruptcy court that they be permitted to retain possession of the van upon continued payment of monthly installments. *Id.* The bankruptcy court

granted the request; the district court reversed. *Id.*

In reviewing the decision upon appeal, the Sixth Circuit Court of Appeals observed that while 11 U.S.C. § 722 [2] clearly authorizes a chapter 7 debtor to redeem certain secured property, the statute did not address the mechanics of redemption, particularly whether redemption may be accomplished through installment payments. *Id.* at 1055. After a careful and thorough analysis, the *Bell* court joined the weight of authority which had previously concluded that redemption must be by lump-sum payment. The court stated that this result was evident from § 722's legislative history which indicated that the statute was designed to incorporate the lump-sum redemption provision of the Uniform Commercial Code. *Id.* More importantly, stated the Sixth Circuit, its conclusion was compelled by its consideration of the "overall statutory scheme" of chapter 7 which gives a debtor the reaffirmation option of 11 U.S.C. § 524(c) as an alternative to redemption. *Id.* at 1055–1057. In the *Bell* court's view, "installment payment under Section 722 would render useless Congress' carefully laid scheme for voluntary agreement under Section 524—clearly indicating that Congress had no intention to allow such payments under Section 722." *Id.* at 1056 (quoting *First Bank & Trust Co. of Ithaca, N.Y. v. Hart (In re Hart)*, 8 B.R. 1020, 1022 (N.D.N.Y.1981)). The absence of a redemption by installment option in chapter 7 was further indicated by the fact that chapter 13 expressly permits redemption by installment over a creditor's objection through the cram-down process. *Id.* at 1057 (citing 11 U.S.C. § 1325(a)(5)). "In sum, construction of Chapters 7 and 13 *in pari materia* discloses that within the overall statutory scheme a debtor desirous of retaining possession of secured collateral is accorded that election by filing a Chapter 13 petition." *Id.*

Notwithstanding that *Bell* was decided prior to § 521(2)'s enactment, the lower courts in this circuit, with limited exception,[3] have concluded in reliance on *Bell* that a chapter 7 debtor cannot simply retain collateral and continue contractual payments post-discharge; instead a debtor must either redeem the property from the creditor's lien or enter into a new agreement with the creditor pursuant to § 524(c). *See In re Lock*, 243 B.R. 332, 334 (Bankr.S.D.Ohio 1999)(The conclusion that "a debtor who wishes to retain collateral must either redeem the property or reaffirm the debt" is compelled by "[t]he plain language of § 521(2)(A)" and "strongly supported by the Sixth Circuit's decision in *In re Bell.*"); *In re Hopkins*, 1997 WL 803718, *1 (Bankr.W.D.Mich. 1997) ("*Bell* instructs that lump-sum redemption and reaffirmation 'constituted the exclusive methods' for debtors to re-

**2.** 11 U.S.C. § 722 provides that:

An individual debtor may ... redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such item.

**3.** In two cases, lower courts in this circuit limited Bell's applicability to personalty, the collateral in *Bell,* because § 722 only authorizes the redemption of personal property from the lien of a creditor. *See Teachers Credit Union v. Rowan (In re Rowan),* 1994 WL 16168505 (W.D.Mich.1994); *In re Laubacher,* 150 B.R. 200 (Bankr.N.D.Ohio 1992). *But see In re Lock,* 243 B.R. 332, 334 (Bankr. S.D.Ohio 1999)("[W]e believe that *In re Laubacher* ... improperly interpreted *In re Bell....* [J]ust because a debtor may not redeem real property under § 722 does not mean that § 521 may be ignored.").

tain possession of the secured collateral."); *Schmidt v. Old Kent Bank & Trust Co. (In re Schmidt)*, 145 B.R. 543, 544–45 (Bankr. W.D.Mich.1992)("This court finds that the holding of *Bell* is applicable to this case, and therefore binding. . . . [T]he Debtors [are] required to either enter into a reaffirmation agreement or redeem in order to retain the property."); *In re Whitaker*, 85 B.R. 788, 791 n. 6 (Bankr.E.D.Tenn.1988)("[I]t is this court's opinion that the principles enunciated in *Bell* remain as applicable today as they were in 1983."). Even the Sixth Circuit Court of Appeals, in an unpublished opinion rendered ten years after § 521(2)'s enactment, has itself reiterated the *Bell* holding. *See Liberty Nat'l Bank & Trust Co. of Louisville v. Burba (In re Burba)*, 1994 WL 709314 (6th Cir. Nov. 10, 1994). As stated by the court therein:

> Chapter 13 allows satisfaction of the present value of the creditor's allowed secured claim through installment payments over time through the time value of interest. In contrast, a Chapter 7 debtor, who does not intend to surrender property subject to a security interest, has two methods by which to retain possession of the secured collateral—reaffirmation of the debt pursuant to 11 U.S.C. § 524(c), or redemption by payment of the "allowed secured claim" under 11 U.S.C. § 722.

*Id.* at *14 (arguably dicta).

Utilizing *Bell* and its progeny as the foundation for the proper interpretation of § 521(2), this court concludes that a chapter 7 debtor does not have the option of retaining collateral by merely making payments on the underlying debt. In reaching this conclusion, it must initially be conceded that the "if applicable" statement in § 521(2)(A), read in isolation, is capable of two different meanings. *Accord In re Price*, 370 F.3d at 371 (" 'If applicable' may be fairly read to limit a debtor's retention options to redemption, reaffirmation, and exemption but it may also be fairly read to leave open the possibility of other options."); *In re Boodrow*, 126 F.3d at 50 ("[W]e believe that the 'plain' language arguably supports either of the interpretations described above."). Nonetheless, § 521(2)(A) is not ambiguous,[4] since only one interpretation is consistent with the remainder of § 521(2) and the Bankruptcy Code's "overall statutory scheme," as presented by the Sixth Circuit in *Bell*. *Cf. In re Boodrow*, 126 F.3d at 50 ("[W]e find the section to be ambiguous as to whether Congress intended the options there listed to be exclusive. . . ."); *Lowry Fed. Credit Union v. West*, 882 F.2d at 1545 n. 2 ("The plain English of the section requires every debtor in possession of collateral to make an election whether to retain or relinquish that property. If the debtor decides to retain, the debtor is required to elect whether to redeem or reaffirm."). In this court's view, the better-reasoned interpretation of § 521(2)(A) is that a debtor must indicate whether he will surrender or re-

---

4. *See In re Price*, 370 F.3d at 369 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)("[J]ust because a particular provision may be, by itself, susceptible to differing constructions does not mean that the provision is therefore ambiguous. The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.' ")); *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, . . . or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.").

tain secured property and if he chooses to retain, he must select from one of the three options of exemption, redemption or reaffirmation. As stated by Judge Shadur, who dissented in *Boodrow*, "[I]t is perfectly conventional usage—and perfectly good English—for someone to employ the 'if applicable' language in the statute as a shorthand way of calling for a choice between A and B and, only if B 'is applicable,' than a further choice among subsets of B." *In re Boodrow*, 126 F.3d at 59 (J. Shadur, dissenting). *See also In re Taylor*, 3 F.3d at 1516 ("[I]t is clear when the options of redemption and reaffirmation would not be applicable. This language does not apply to a debtor's surrender of the property; it therefore must apply to a debtor's retention of property. If a debtor retains secured property, then the options of redemption and reaffirmation are applicable and the debtor is required to redeem or reaffirm.").

Congress, in all likelihood, used the word "if applicable," because all three of the specified options are not always available to every debtor who wants to retain secured property. For instance, a debtor's right to redeem is limited under § 722 to tangible personal property intended for personal, family or household use. *See* 11 U.S.C. § 722, n.1 supra. Thus, the redemption option would not be "applicable" to a debtor who seeks to retain real property or commercially-used personal property even though the debtor would be required by § 521(2)(A) to set forth in a statement of intention whether he intended to retain or surrender these items if they are security for a consumer debt.[5]

*See* Jim D. Pappas, *Section 521(2) of the Bankruptcy Code: The Creditor's Predicament in Getting Paid As Agreed*, 99 Com. L.J. 45, 61 (Spring 1994).

This interpretation of § 521(2)(A) is also indicated by the directive in § 521(2)(B). Subparagraph (A) of § 521(2) requires a debtor to file the statement of intention; subparagraph (B) unambiguously obligates a debtor to perform the stated intention with forty-five days or such additional time set by the court. *See* 11 U.S.C. § 521(2)(A) ("[W]ithin forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph."). As observed by the Eleventh Circuit Court of Appeals in *Taylor*:

An option to retain and keep current is not an act capable of performance within forty-five days. This option provides that the debtor's performance not be concluded until the expiration of the contract, a period of time ordinarily beyond the forty-five day limit. Additionally, retention is not a duty that the debtor needs to "perform," as the debtor already has possession of the property.

*In re Taylor*, 3 F.3d at 1516. Similarly, Judge Shadur in *Boodrow* noted that the "obligation of a debtor to 'perform his intention' within 45 days after filing the notice of intent is totally at odds with any concept of Congress having contemplated a 'fourth option' involving a continued and extended payout schedule that would run

---

**5.** Other examples of when the three retention options would not be applicable according to their own terms include: "If the secured creditor does not consent to a reaffirmation agreement ... or if the chapter 7 debtor's discharge has already been granted, then reaffirmation pursuant to § 524(c) is not 'ap-

plicable.' If the secured creditor holds a judicial lien for alimony or a purchase-money security interest, then the avoidance of liens impairing exemptions pursuant to § 522(f) is not 'applicable.'" *In re Amoakohene*, 299 B.R. 196, 206 (Bankr.N.D.Ill.2003).

the length of the underlying consumer debt contract—a period of many months (or years) in most cases." *In re Boodrow*, 126 F.3d at 59 (J. Shadur, dissenting).

■ In this regard, it must be pointed out that the language of § 521(2) is mandatory. *See Matter of Edwards*, 901 F.2d at 1386. Subparagraph (A) provides that within the specified time period, "the debtor *shall* file with the clerk a statement of intention...." 11 U.S.C. § 521(2)(A) (emphasis supplied). Correspondingly, subparagraph (B) states that "the debtor *shall* perform his intention" within 45 days. 11 U.S.C. § 521(2)(B) (emphasis supplied). As one commentator has noted, "It would be curious for Congress to order a debtor to perform, but not to restrict the possible options available to the debtor." 99 Com. L.J. at 61–62.

Furthermore, the interpretation of § 521(2) reached by this court is consistent with subparagraph (C) of § 521(2), which provides: "nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title." It has been suggested that denying a debtor the option of retaining property while staying current would contravene this provision. *See, e.g., In re Price*, 370 F.3d at 372. But as explained by the First Circuit Court of Appeals in *Burr*:

> Section 521(2)(C) merely acts to make supreme over the directives of § 521(2)(A) and (B) rights conferred upon the trustee and debtor elsewhere in the Bankruptcy Code.... When this is properly understood, any appearance of self-contradiction evaporates. Chapter 7 debtors do not, of course, enjoy a freestanding right under the Bankruptcy Code to retain property securing a consumer debt merely by keeping current on their payments under old loan agreements. Nor do they maintain a freestanding right under the Code to maintain with their secured creditors advantageous arrangements in place prior to filing.

*In re Burr*, 160 F.3d at 848. Judge Shadur, in his dissenting opinion in *Boodrow*, echoed this analysis, finding no inconsistency with § 521(2)(C) because of "the total absence from the Bankruptcy Code of any provision that would expressly permit the 'fourth option.'" *In re Boodrow*, 126 F.3d at 60 (J. Shadur, dissenting). "Congress has simply not seen fit to insert (or even to recognize) such a 'reinstatement' option in the Code—whether by a separate explicit provision (as it has in the cases of Section 722 for redemption and Section 524(c) for reaffirmation), or even by reference in the text of Section 521(2)(A)." *Id.*

The legislative history to § 521(2) does not indicate or suggest an interpretation that is inconsistent with the one favored by this court. *See Vergos v. Gregg's Enters., Inc.*, 159 F.3d 989, 990 (6th Cir.1998)("The court must look beyond the language of the statute ... when the text is ambiguous or when, although the statute is facially clear, a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress."). Subsection (2) of § 521 was added to the Bankruptcy Code as part of "The Bankruptcy Amendments and Federal Judgeship Act of 1984," but there was no Senate or House Report which accompanied the legislation. *In re Belanger*, 118 B.R. 368, 371 (Bankr. E.D.N.C.1990), *aff'd*, 962 F.2d 345 (4th Cir.1992).

> The closest legislative statement interpreting § 521(2) is a statement made by Representative Rodino in response to a request by Representative Synar that he "explain what rights are reserved to the debtor and trustee under § 521(2)(C)." 130 Cong. Rec. H1810 (daily ed. Mar. 21,

1984). According to Chairman Rodino, the duty imposed under § 521(2) "does not affect the substantive provisions of the code which may grant the trustee or debtor rights with regard to such property." *Id.*

*Id.* at 372.

The only other indication of Congress' purpose in enacting § 521(2) has been gleaned from statements made at various congressional subcommittee hearings, which indicate that:

> [Section] 521(2)(A) was intended specifically to eliminate the problem that secured creditors could not determine what a debtor who had filed for bankruptcy was going to do with collateral securing a debt.... Instead of the creditor having to spend time and money obtaining this information through judicial proceedings, § 521(2) placed on a debtor "the responsibility of giving creditors information as to what they intend to do with the collateral."

*In re Boodrow,* 126 F.3d at 51 (quoting *In re Belanger,* 118 B.R. at 370 n. 5).

Thus, it appears from the language of § 521(2)(C), the statute's legislative history, and its purpose that Congress did not intend to substantively affect a debtor's retention options under the Bankruptcy Code. Instead, § 521(2) merely reiterates the options which are otherwise available to a debtor under the Code, and then specifies a procedure for the debtor to give the secured creditor notice of the option selected by him. *Cf. In re Boodrow,* 126 F.3d at 51 ("We agree that § 521(2) appears to serve primarily a notice function...."); *In re Belanger,* 962 F.2d at 347 (quoting 3 COLLIER ON BANKRUPTCY ¶ 521.09A (15th ed.1991) (Section 521(2) "affect[s] only procedure, and not substantive rights of the debtor.")); *In re Amoakohene,* 299 B.R. 196, 203 (Bankr.N.D.Ill. 2003) ("Because of this mandate [that the debtor choose between retention and surrender and then perform the intention], the subsection aids secured creditors in ways that go beyond just providing them notice of intent; it gives them a substantive right to have the intent effectuated within time frames that avoid prejudice to the value of secured creditors' interest in collateral."). In this circuit, the retention options which are available to a debtor under the Bankruptcy Code are the ones delineated and explained by the Sixth Circuit in *Bell.*[6]

---

**6.** This court attaches no undue significance to the fact the Sixth Circuit in *Bell* did not list exemption as a retention option, even though it is one of the three retention options listed in § 521(2)(A). Retention through exemption and lien avoidance was not available to the debtors in *Bell* because even though the Bells had claimed the Chevrolet van exempt, they would not have been able to avoid GMAC's lien due to its purchase-money nature. *See In re Bell,* 700 F.2d at 1054; 11 U.S.C. § 522(f)(2)(B). And, as explained by the court in *Amoakohene,* the "exemption" option will rarely be a means for a debtor to retain property over a secured creditor's objection. *See In re Amoakohene,* 299 B.R. at 200.

> First, to free the collateral from the creditor's lien and concomitant foreclosure rights and remedies, the debtor must be able to entirely avoid the lien. But, under § 522(f) of the Bankruptcy Code, the debtor may only avoid liens "to the extent that such lien impairs an exemption to which the debtor would have been entitled." Whether the creditor's lien will in fact be completely or partially avoided will depend on the value of the debtor's interest in the collateral, the amount of the debt secured by the lien, and the amount of the exemption.... Second, a debtor who grants consensual liens (security interests and mortgages) generally cannot overcome them using the state-law exemption scheme alone; rather, he must utilize the specific lien-avoidance powers delineated in § 522(f).... Furthermore, a debtor cannot avoid consensual liens—even if they impair an exemption to which he would have been entitled but for the lien at is-

Notwithstanding that the precise issue in *Bell* was whether redemption by installments was permissible, the court's ruling was much broader: the only options available to a debtor are the ones expressly set out in the Code, i.e., lump-sum redemption and reaffirmation in chapter 7 and cramdown in chapter 13. To rule as argued by the Chubbs and Davises in the present case would require this court to disregard *Bell* and its holding. For example, courts which have denied the retain-and-keep-current option have noted that its allowance would render the other options far less attractive. "[I]t would be the rare debtor indeed who would elect reaffirmation or redemption over the unstated fourth option, which neither requires a large lump sum payment (redemption) nor resuscitates personal liability for the underlying debt post-discharge (reaffirmation)." *In re Burr*, 160 F.3d at 847 (citing *In re Boodrow*, 126 F.3d at 60 (J. Shadur, dissenting)). *See also In re Boodrow*, 126 F.3d at 60 (J. Shadur, dissenting) ("Any practitioner possessing even a modicum of familiarity with bankruptcy proceedings knows that this so-called 'fourth option' would be by far the most advantageous option for many Chapter 7 debtors who, though insolvent, file for bankruptcy while they are current on their secured consumer loans."); *In re Taylor*, 3 F.3d at 1515–16 ("[I]f a debtor is permitted to retain the collateral without performing either redemption or reaffirmation, both of these alternatives would be rendered 'nugatory'.... 'A Chapter 7 debtor would never have a reason to either reaffirm the debt or redeem the collateral if this or other alternatives existed.'"); *Matter of Ed-*

*wards*, 901 F.2d at 1386 ("No debtor would reaffirm personal liability unless required to do so.").

The debtors herein dispute the contention that approval of the retention option will deter debtors from entering into reaffirmation agreements. They assert that reaffirmation may be seen as a positive means to reestablish credit after bankruptcy, that debtors not current on their loan payments at the time of bankruptcy may seek to negotiate a reaffirmation agreement, or that a debtor may wish to reaffirm the original contract since it may have contained certain consumer protection provisions, citing *In re Boodrow*, 126 F.3d at 52. However, these assertions were rejected by implication in *Bell* as evidenced by the court's conclusion that permitting redemption by installments would render reaffirmations unattractive and destroy Congress' carefully laid statutory scheme. "[I]f Section 722 payments could be made by installment, no debtor would ever have reason to reaffirm under Section 524(c)(4)(B)(ii), since, by right, he could obtain under Section 722 the same end—continuing possession of his property—under the same terms—payment by installment—for what would often be a significantly lower price." *In re Bell*, 700 F.2d at 1056 (quoting *In re Hart*, 8 B.R. at 1022). Phrased differently by the court, "if a debtor is authorized by the bankruptcy court to redeem by installments over the objection of the creditor, such practice would render the voluntary framework of § 524(c) an exercise in legislative futility." *Id.* These same results would occur if this court permits the retention-by-keeping-current option sought by the debtors.

sue—when they (1) are possessory, (2) are the purchase-money type, or (3) are attached to property other than the personal property enumerated in a very specific list of items. *See* 11 U.S.C. § 522(f)(1)(B).

*Id.* at 200–01. The limited availability of the exemption option is illustrated by the cases at hand in that neither the Chubbs nor the Davises would be able to avoid under § 522(f) the purchase-money liens of the Credit Union, although this fact has not been stipulated.

The Chubbs and the Davises also cite the practical problems with limiting a debtor's options to redemption, reaffirmation, or conversion to chapter 13. They note that it is highly unlikely that a debtor in bankruptcy would have the means to make a lump-sum redemption for assets of considerable value; that the reaffirmation option is not always available because the creditor may refuse to consent or demand more favorable treatment in exchange for its consent and reaffirmation requires certification by debtor's counsel, often putting counsel in conflict with the debtor; and that chapter 13 is an inadequate solution since "the decision to file a chapter 13 involves a weighing of various factors that the debtor should not be compelled to consider solely in the context of his or her need to retain certain property."

 Similar arguments regarding the insufficiencies of the redemption and reaffirmation options were made but rejected in *Bell.* "[T]hose deficiencies are more properly directed to Congressional review, and consequently, provide a poor excuse for judicial legislation." *Id.* at 1057 (quoting *Chrysler Credit Corp. v. Schweitzer (In re Schweitzer),* 19 B.R. 860, 864 (Bankr. E.D.N.Y.1982)). Likewise, any inequities in limiting a debtor to the options expressly set forth in the Code "cannot serve as a basis for the bankruptcy court to abdicate its judicial function of statutory interpretation and resort to legislation by judicial decree." *Id.* at 1056–57. "While a bankruptcy court is invested with equity jurisprudence, application of that jurisdiction must comport to and remain compatible with the prevailing legislative intent." *Id.* at 1057.

The debtors in the present case also seek to refute the arguments offered by the courts which reject the retain-and-keep-current option. They dispute the contention that a secured creditor is preju-diced by the retention option, asserting that it is more favorable to the creditor than surrender because if the collateral is surrendered, the creditor will have administrative costs, the collateral will generally be sold for far less than the outstanding balance on the loan, and the creditor will be unable to realize the interest payments the debtor was contractually obligated to pay. The debtors argue that "[b]ut for the right to pursue a debtor for a potential deficiency, the creditor continues to receive all of the benefits of the original bargain" since the creditor's *in rem* remedies will not be affected by the debtor's discharge, citing *In re Boodrow,* 126 F.3d at 52. The debtors also maintain that retention is more beneficial to the creditor than redemption because redemption is only for the liquidation value of the collateral while if retention were permitted, the creditor would receive the entire amount owed under the parties' agreement. Lastly, the debtors reject the assertion that they will be given a "head start" rather than a "fresh start," arguing that they have a greater incentive to stay current and maintain payments because their ability to obtain credit has been impaired by their bankruptcy filing, again citing *In re Boodrow,* 126 F.3d at 59.

While this court is somewhat sympathetic to the debtors' assertions, it must conclude that all of these arguments were addressed, at least implicitly, in *Bell.* The Sixth Circuit observed therein that a secured creditor would be prejudiced by the redemption through installment option: the bankruptcy court is ill-equipped to effectively monitor post-discharge payments, and because the debtor's personal liability will be removed through discharge, the creditor will no longer be safeguarded from the debtor's default "possibly predicated upon a waste of the collateral, inability to meet the monthly installments or

lack of motivation to continue payments on a rapidly depreciating collateral such as a vehicle." *In re Bell*, 700 F.2d at 1056. *See also In re Taylor*, 3 F.3d at 1516 ("Allowing a debtor to retain property without reaffirming or redeeming gives the debtor not a 'fresh start' but a 'head start' since the debtor effectively converts his secured obligation from recourse to nonrecourse with no downside risk for failing to maintain or insure the lender's collateral."); *Matter of Edwards*, 901 F.2d at 1386 ("When a debtor is relieved of personal liability on loans secured by collateral, the debtor has little or no incentive to insure or maintain the property in which a creditor retains a security interest.").

In addition, the United States Supreme Court has recognized that a secured creditor is subjected to greater risks if the debtor chooses to retain rather than surrender collateral. *See Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). As stated by the court:

> When a debtor surrenders the property, a creditor obtains it immediately, and is free to sell it and reinvest the proceeds.... If a debtor keeps the property and continues to use it, the creditor obtains at once neither the property nor its value and is exposed to double risks: The debtor may again default and the property may deteriorate from extended use.

*Id.* at 962, 117 S.Ct. 1879. At issue in the *Rash* case was the appropriate valuation of collateral "when a debtor, over a secured creditor's objection, seeks to retain and use the creditor's collateral in a Chapter 13 plan," pursuant to the cram-down option of § 1325(a)(5). *Id.* at 955, 117 S.Ct. 1879. If it is true, as the Supreme Court suggests, that a secured creditor in a chapter 13 cram-down is exposed to double risks, then it must follow that a secured

creditor under the retain-and-keep current option urged by the debtors is subject to triple risks. In a chapter 13 scenario, there is no discharge until completion of the plan payments. *See* 11 U.S.C. § 1328(a). Thus, even if the chapter 13 debtor defaults or the collateral depreciates, the debtor remains personally liable until such time as he fully complies with the plan. In a chapter 7 case, however, because a debtor will generally receive a discharge of his personal liability well before the completion of the contractual installments, a secured creditor may lose all three benefits provided by its bargain: repayment of its debt, the collateral which was security for the debt, and the ability to hold the debtor personally responsible for the obligation. Absent express statutory authority, this court will not permit such a result over the secured creditor's objection. *See In re Boodrow*, 126 F.3d at 60 (J. Shadur, dissenting) (Because Congress explicitly provided for retention of collateral in the cram-down process in chapter 13, it would be improper to infer congressional approval of a similar cram-down option in chapter 7. "When Congress wants to provide for a 'cram down' that enables a debtor to keep property over the objection of a secured creditor, it knows full well how to do so."); *In re Amoakohene*, 299 B.R. at 205 ("Under the unstated fifth option of § 521(2), the chapter 7 debtor receives the retention benefits of a chapter 13 plan while the secured creditor receives none of the legal protections that chapter would afford."); *In re Whitaker*, 85 B.R. at 793 ("For this court to hold that these debtors, by continuing to make uninterrupted installment payments, are able to hold the Bank at bay after the Toyota has been abandoned and the debtors discharged, is to empower debtors with an unorthodox form of 'cram-down' in a Chapter 7 case. Such a procedure is not sanctioned under Chapter 7 of the Bankruptcy Code.").

III.

■ Based on all of the foregoing, this court concludes that the Chubbs and Davises have not properly complied with § 521(2)(A) since their statements of intention did not indicate if they would be redeeming or reaffirming the properties which are collateral for the debts to Eastman Credit Union. Accordingly, Eastman Credit Union is entitled to relief from the automatic stay. *See In re Amoakohene,* 299 B.R. at 208 (and cases cited therein) ("Modification of the automatic stay for 'cause' under § 362(d)(1) has been consistently found to be the most appropriate form of [stay] relief for 'garden variety' violations of § 521(2)."). As such, it is not necessary for the court to determine whether relief should also be granted pursuant to § 362(d)(2). The court will enter appropriate orders concurrently with this memorandum opinion.

SO ORDERED.